**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**DEMETRIS MCNUTT**                                                    **PLAINTIFF**

**VS.**                                              **CIVIL ACTION NO. 1:09cv205-HSO-JMR**

**KEN BROADUS, MIKE NUTEFALL,**
**MIKE BYRD, and CINDY STEWART**                              **DEFENDANTS**

─────────────────────────────────────────────────────────────────

### REPORT AND RECOMMENDATION:

This matter is before the Court pursuant to a Motion [37-1] for Summary Judgement filed

on behalf of Defendants Ken Broadus, Mike Byrd, Mike Nutefall, and Cindy Stewart (collectively

hereinafter "Defendants") on August 4, 2010.   Defendants' summary judgment motion is

accompanied by a Memorandum [38-1] in Support Thereof.   To date, Plaintiff has not filed a

response in opposition. The Court being fully advised in the premises, and after carefully considering

the pleadings filed as a matter of record, along with the applicable law, recommends that

Defendants' Motion for Summary Judgment be granted and all claims against Defendants be

dismissed with prejudice.[1]

### FACTS:

Plaintiff, Demetris McNutt, was indicted by the Grand Jury of the Jackson County Circuit

─────────────────────

[1]The Court notes that full discovery was allowed in the present case before Defendants' summary judgement motion was filed.  A scheduling order was entered on June 12, 2009 setting the discovery deadline for September 1, 2009. (*See* Order [12].)  The discovery deadline was extended on October 2, 2009 to January 11, 2010, due to Plaintiff's failure to provide the court with a current address.  On January 11, 2010, the discovery deadline was again extended to February 10, 2010, due to Plaintiff's failure to provide a current address.  On February 11, 2010, the discovery deadline was extended to March 29, 2010, due to Plaintiff's failure to participate in discovery with the Defendants.  The Court further notes that Plaintiff never filed a motion to compel, and the only action that Plaintiff took in prosecuting the present case was filing his Complaint and Motion to Proceed *In Forma Pauperis* on March 12, 2009. (*See* Docket.)

Court of Mississippi on March 28, 2008, for possession of stolen property and felony evading a police officer. (*See* Ex. "A" Attach. [37-1] Mot. Summ. J.)  On April 30, 2008, Plaintiff was arrested by the Jackson County Sheriff's Department and detained at the Jackson County Adult Detention Center ("JCADC") to await trial on the pending charges. *Id.* at 4.  Also, Plaintiff was subsequently indicted for capital murder on August 29, 2008. *Id.* at 3.  Plaintiff was convicted and sentenced to life imprisonment in the Mississippi Department of Corrections for the capital murder charge, and he is no longer incarcerated at the JCADC.[2] *Id.* at 9.  On March 12, 2009, Plaintiff filed this *pro se* § 1983 action against Defendants, and alleges that he suffered violations of his civil rights while being held as a pretrial detainee in the JCADC.

In his Complaint, Plaintiff contends that he was subjected to unconstitutional conditions of confinement and physical abuse by a correctional officer during his detention at the JCADC. Plaintiff also claims that his due process and equal protection rights were violated.  Specifically, Plaintiff alleges that he was placed in a segregated, all black dayroom.  Plaintiff further claims that he was physically abused by Defendant Deputy Mike Nutefall while he was handcuffed on January 30, 2009.  Also, Plaintiff asserts that the deputies at the JCADC have not been properly trained. Plaintiff seeks a public apology and "whatever [the Court] deems proper." (Pl.'s Compl. [1-1] 4.)

## STANDARD OF REVIEW:

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The mere existence of a factual dispute does not by itself preclude the granting of summary

---

[2] The Court notes that the address Plaintiff is currently using for the instant action is M.D.O.C.'s facility in Leakesville, Mississippi, South Mississippi Correctional Institution. (*See* Docket.)

judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680, 693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839

F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights. It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695.  Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom.  *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy.  *Id.* at 580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264.  The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation.  *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999).  *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (Stating that these two requirements "must not be diluted").

## ANALYSIS:

As a pretrial detainee, Plaintiff's constitutional rights flow from the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual punishment.  Because they have not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979).   The Supreme Court has stated the distinction between conditions that may be constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial

detainees as follows:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. **Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.**

*Ingraham v. Wright,* 430 U.S. 651, 671-72 (1977) (emphasis added).

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement"[3] or "episodic act or omission." *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997) (en banc).   The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment." *Hamilton*, 74 F.3d at 103.  "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless" *Bell*, 441 U.S. at 539.  "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. *Id.* at 561.  "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir.1996).

When a pre-trial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's

---

[3] The following were deemed to be conditions-of-confinement cases: *Murphy v. Walker,* 51 F.3d 714 (7th Cir.1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United States Bureau of Prisons,* 51 F.3d 315 (1st Cir.1995) (disciplinary segregation and denial of telephone and visitation privileges); *United States v. Millan,* 4 F.3d 1038 (2d Cir.1993) (length of pre-trial detention); *Hause v. Vaught,* 993 F.2d 1079 (4th Cir.1993) (restriction on mail privileges); *Brogsdale v. Barry,* 926 F.2d 1184 (D.C.Cir.1991) (overcrowding); *Lyons v. Powell,* 838 F.2d 28 (1st Cir.1988) (22-23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins,* 711 F.2d 31 (4th Cir.1983) (policy of refusing detainees access to drugs for rehabilitation); *Lareau v. Manson,* 651 F.2d 96 (2d Cir.1981) (overcrowding).

constitutional rights. *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001). When the alleged constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is appropriate. *Scott,* 114 F.3d at 53-54. To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. *See Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.1999).

The Court notes that Plaintiff's Complaint alleges both unconstitutional conditions of confinement and episodic acts or omissions. Therefore, the Court shall address the two categories of allegations individually.

## I.  Conditions of Confinement:

In their Motion [37-1] for Summary Judgment, Defendants assert that Plaintiff has failed to exhaust his administrative remedies as to his condition of confinement and equal protection claims, and therefore his section 1983 condition of confinement and equal protection claims should be procedurally barred under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Alternatively, Defendants contend that Plaintiff's official capacity claims against them are, in reality, claims against Jackson County. Thus, Plaintiff must demonstrate that his claims are actionable under the United States Supreme Court's jurisprudence regarding municipal liability under section 1983. Defendants also assert that Plaintiff's individual capacity claims are subject to a qualified immunity defense because not only has Plaintiff failed to sufficiently establish that a violation of his Constitutional rights has occurred, but Defendants' conduct was objectively reasonable and Defendants were acting within the scope of their discretionary authority at all relevant times.

Plaintiff's complaint was filed pursuant to 42 U.S.C. § 1983, and is thereby subject to the Prison Litigation Reform Act ("PLRA"), which provides in pertinent part, "No action shall be

brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*." 42 U.S.C. § 1997e(a) (emphasis added). The PLRA requires the plaintiff "to exhaust 'available' 'remedies,' whatever they may be. The failure to do so prevents him for pursuing a federal lawsuit at this time." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). "In *Booth v. Churner*, the Supreme Court decided that Congress intended a prisoner to invoke 'such administrative remedies as are available' in the prison, without regard to whether the grievance procedure affords money damage relief, before he may file suit contesting prison conditions in federal court." *Wright*, 260 F.3d at 358 (citation omitted).    The Supreme Court's finding was further summed up in a footnote: " Here, we hold only that Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative sources." *Booth v. Churner*, 532 U.S. 731, 741, n. 6. (2001). The Supreme Court has also held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Tussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).  The district court is not required to determine if the petitioner made a good faith effort to pursue his administrative remedies. *Underwood v. Wilson*, 151 F.3d 292, 294 (5th Cir. 1998)(overruled on other grounds).

The Court notes that Plaintiff's inmate file does not contain one inmate grievance form concerning being segregated by race or being subjected to poor living conditions. (*See* Ex. "A" Attach. [37-1] Defs.' Mot. Summ. J.)  The Court further notes that Plaintiff's file contains grievance forms submitted by Plaintiff regarding a confiscated t-shirt, an incident on January 30, 2009, and alleged threats by deputies, however, no forms mention the alleged unconstitutional segregation or

jail conditions. *Id.* Therefore, upon a thorough review of the record and the pleadings before the Court, the Court finds that Plaintiff has failed to avail himself of the available administrative remedies provided by the JCADC. Accordingly, this Court finds that the instant 42 U.S.C. § 1983 condition of confinement and equal protection claims should be dismissed for Plaintiff's failure to meet the PLRA's administrative remedies exhaustion requirement.

Although Plaintiff's failure to exhaust available administrative remedies is dispositive as to his section 1983 condition of confinement and equal protection claims, the Court will, out of an abundance of caution, proceed to review Plaintiff's substantive claims against Defendants in both their official and individual capacities.

Plaintiff alleges that he was subjected to unconstitutional conditions of confinement while he was incarcerated as a pretrial detainee within the JCADC, and that Defendants Byrd, Broadus and Stewart are officially liable because they failed to remedy the situation. Plaintiff's official capacity claims against Defendants Byrd, Broadus and Stewart are, in reality, claims against the offices which they occupied at the time of the alleged incident and, ultimately, Jackson County. Therefore, to the extent Plaintiff brings this action against Defendants Byrd, Broadus and Stewart in their official capacities, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability; that the JCADC had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the JCADC's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Plaintiff alleges that he was subjected to racial discrimination by being placed in an all black dayroom with poorer conditions. (Pl.'s Compl. [1-1] 5.) Plaintiff claims that other zones have more space, bigger televisions, and cleaner restrooms. *Id.* However, other than the above mentioned

allegation of unconstitutional conduct, Plaintiff presents no evidence that an official policy of the JCADC existed which violated his constitutional rights. The Court finds that such bare allegations, without more, is simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violations. At best, Plaintiff's assertions amount to isolated instances of negligent conduct, which are insufficient to support the instant official capacity claim against Jackson County. Accordingly, Defendants Byrd, Broadus and Stewart are entitled to summary judgment on Plaintiff's official capacity claims as they relate to the conditions of the JCADC.

Additionally, the Court notes that Plaintiff does not specify whether his claims are against Defendants Byrd, Broadus and Stewart in their individual capacities, their official capacities, or both. Because *pro se* complaints must be construed liberally, the Court will interpret Plaintiff's Complaint to allege claims against Defendants Byrd, Broadus and Stewart in their individual and official capacities. *See Williams v. Love*, 2006 WL 1581908, *5 (S.D.Tex. 2006). However, because they are law enforcement officials, they may raise the defense of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986).

In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). As a pretrial detainee, Plaintiff has a constitutional right not to be punished for the crimes with which he has been charged. Therefore, to the extent that Plaintiff seeks to establish § 1983 liability against Defendants Byrd, Broadus and Stewart, Plaintiff must offer proof that the conditions at the JCADC were imposed as a form of punishment. *Hamilton,* 74 F.3d at 103. A punitive purpose can be established by direct evidence of intent by detention facility officials to punish the pretrial detainee. *Bell,* 441 U.S. at 538. Alternatively, a punitive purpose may

be inferred if the challenged condition is not reasonably related to a legitimate governmental objective. *Id.* at 539.

The Court finds that Plaintiff's allegation that the JCADC engages in invidious racial segregation, by placing Plaintiff in an all black dayroom, does not rise to the level of a constitutional violation. To succeed on his equal protection claim, Plaintiff "must prove purposeful discrimination resulting in discriminatory effect among persons similarly situated." *Adkins v. Kaspar*, 393 F.3d 559, 566 (5th Cir. 2004). However, the Court notes that Plaintiff has proffered only conclusory allegations of racial bias, and has submitted no evidence to support his claim. The Court finds that such baseless allegations are insufficient to establish an equal protection violation. *Id*. at 567. Further, Defendants admit that on certain dates during Plaintiff's incarceration at the JCADC it appears that he was housed in an all black dayroom. (*See* Ex. "F" Attach. [37-3] Mot. Summ. J.) However, Defendant Broadus, Director of the JCADC, stated by affidavit that this occurrence was unintentional and temporary. *Id.* Defendants maintain that Plaintiff was never purposefully placed or purposefully held in an all black zone while he was at the JCADC. (*See* Defs.' Mem. [38-1] 5, *see also* Ex. "E" Attach. [37-2] Mot. Summ. J.) Inmates are constantly moved for safety reasons based upon several classification issues including gang affiliation, charges, convictions, etc. (*See* Exs. "E," "F" Attach. [37-2, 37-3] Mot. Summ. J.) Furthermore, inmates are separated by pretrial and post trial status and, thus, inmates are moved about the jail as each population fluctuates. (Defs.' Mem. [38-1] 7.) Defendant Stewart, the JCADC classification officer, stated in her affidavit that the JCADC tries to ensure that all zones have a racial mix of inmates so that no zone is segregated by race, and that any such occurrence was not purposeful. (*See* Ex. "E" Attach. [37-2] Mot. Summ. J.) Plaintiff has offered no evidence to rebut these race-neutral explanations for the alleged racial segregation of inmates. Also, Plaintiff admits in his complaint that not all zones were segregated

by race but that other zones contained a mix of black and white inmates. (Pl.'s Compl. [1-1] 5.) Furthermore, inmates have no recognizable due process interest in custodial classifications. *See Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)(citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998). The Court finds this issue to be without merit.

The Court further finds that Plaintiff's claim that he was subjected to poor conditions in the JCADC does not rise to the level of a constitutional violation. Plaintiff alleges that other zones within the JCADC have more space, bigger televisions and cleaner restrooms. Defendants Byrd, Broadus and Stewart contend that Plaintiff's allegations are simply not true, and they note that he does not allege that he was ever denied a basic human need. Despite Plaintiff's allegations, the Court notes that Plaintiff offers no evidence that Defendants maintain the facility in this manner as a form of punishment. Furthermore, the evidence is clear that Defendants try to maintain the JCADC in a serviceable condition and provide basic human needs. Although the facilities are not kept to Plaintiff's liking, "there is . . . a *de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 (*citing Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).

After a review of the evidence, the Court finds that Defendants Byrd, Broadus and Stewart are entitled to qualified immunity because Plaintiff has failed to create a genuine issue as to whether the conditions of his confinement were imposed as a form of punishment. The record is bereft of any facts tending to indicate that they were actually aware of the allegedly unconstitutional conditions at the JCADC. Furthermore, Plaintiff has failed to allege an express intent on the part of Defendant Byrd, Broadus or Stewart to subject him to the allegedly unconstitutional conditions as a measure of punishment.

Assuming, arguendo, that Plaintiff's allegations are sufficient to create an issue as to whether he suffered a violation of his constitutional rights, the Court finds that Defendants Byrd, Broadus

and Stewart are still entitled to qualified immunity because their conduct was objectively reasonable. *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998).   Furthermore, the Court finds that Plaintiff's allegations do not indicate any objectively unreasonable conduct on behalf of Defendant Byrd, Broadus or Stewart, as Plaintiff has  failed to present any evidence that they were capable of operating the facility in a different manner.   Accordingly, the Court finds that Plaintiff's conditions of confinement claims against Defendants Byrd, Broadus and Stewart do not rise to actionable claims and must be dismissed.

## II.  Episodic Acts and Omissions:

In addition to the allegations concerning the conditions of the JCADC, Plaintiff also alleges that Defendants are liable for various episodic acts and omissions which constituted deliberate indifference to his constitutional rights.   As stated earlier, Plaintiff does not specify whether his claims against Defendants are in their official capacities, their individual capacities, or both. Because *pro se* complaints are to be construed liberally, the Court will interpret Plaintiff's Complaint to allege claims against Defendants in both their individual and official capacities.

A.  Excessive Force

Plaintiff's Complaint makes an allegation regarding an incident of violence involving an employee of the JCADC.  Specifically, Plaintiff alleges that on January 30, 2009 Defendant Nutefall choked him, punched him in the face, and kicked him in the side. (*See* Pl.'s Compl. [1-1] 4.) Plaintiff claims that he was handcuffed when Defendant Nutefall kicked him in the side. *Id.*  Plaintiff asserts that Defendants are liable in both their individual and official capacities for this alleged incident.

Defendant Nutefall's report of the incident notes that on January 30, 2009, the television was turned off in J-E dayroom after inmates refused orders to get out of the windows. (Ex. "A" Attach.

[37-1] Mot. Summ. J. 18.)  After the television was turned off, Defendant Nutefall claims that Plaintiff became violent and returned to the dayroom. *Id.*  Defendant Nutefall reported that Plaintiff took his uniform off, cursed at and threatened to fight Deputy H. Kelly. *Id.*  Defendant Nutefall claims that he told Plaintiff to calm down and pack his property because he was being moved to B-E lockdown. *Id.*  Defendant Nutefall reported that Plaintiff refused to comply with his order and instead made an aggressive move towards him. *Id.*  Defendant Nutefall attempted to restrain Plaintiff by taking him to the floor, however, he claims that Plaintiff began to fight back. *Id.*  Deputies Arnaud, Kelley and Evans responded and assisted Defendant Nutefall in restraining Plaintiff. *Id.* Following the altercation, Plaintiff was strip searched and placed into B-E lockdown. (Ex. "A" Attach. [37-1] Defs.' Mot. Summ. J. 18.)

As previously noted, Plaintiff has not responded to Defendants' summary judgment motion. However, Plaintiff did attach to his complaint affidavits from inmates who allegedly witnessed the altercation, including an affidavit from Plaintiff. (Pl.'s Compl. [1-2] 1-4.)  The affidavits do not address whether or not Plaintiff refused orders from deputies, made an aggressive move, or resisted their attempts to restrain him, but merely state that Plaintiff never took a "swing" at Defendant Nutefall. *Id.*  The affidavits note that several words were exchanged between Plaintiff and Defendant Nutefall and Deputy Evans. *Id.*  The affidavit of inmate Nicholas Winters called it a "verbal disagreement" and states that Plaintiff told Deputy Evans that he was going to "straighten him if he continued" to treat him like a child. *Id.* at 4.  The affidavits also note that Defendant Nutefall took Plaintiff to the ground in an altercation and that several other officers assisted in restraining Plaintiff. (Pl.'s Compl. [1-2] 1-4.)  The affidavits state that Defendant Nutefall choked, punched and kicked Plaintiff while other deputies were restraining him. *Id.*  Plaintiff's affidavit states that Defendant Nutefall "rushed me and choked me, and he kicked and punched me." (Pl.'s Compl. [1-2] 2.)

Though Plaintiff alleged in his complaint that he was kicked by Defendant Nutefall while he was handcuffed, the affidavits never mention any handcuffs. (Pl.'s Compl. [1-2] 1-4.)

Plaintiff's official capacity claim against Defendants are, in reality, a claim against the offices which they occupied at the time of the alleged incident and, ultimately, Jackson County.  Therefore, to the extent Plaintiff brings this action against Defendants in their official capacities, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the JCADC had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the JCADC's deliberate indifference to that injury.  *See Lawson*, 286 F.3d at 263.

Other than the above allegation of an incident of allegedly unconstitutional conduct, Plaintiff presents no evidence that an official policy of the JCADC existed which violated his constitutional rights.  The Court finds that such a bare allegation, without more, is simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation.  Plaintiff has presented no evidence that Defendants Sheriff Byrd or Director Broadus were involved in the alleged abuses against him or were even aware they had occurred.  At best, Plaintiff's assertion amounts to an isolated incident of negligent conduct, which, by itself, is insufficient to support the instant official capacity claim against the Defendants.

To the extent that Plaintiff seeks to hold Defendants liable in their individual capacities, they assert that they are entitled to the defense of qualified immunity.  Also, Defendants Byrd, Broadus, and Stewart note that Plaintiff has not alleged, nor is there any evidence, that they were present during any alleged abuse, let alone that any of them took part in said abuse.  They also note that Plaintiff only alleges that Defendant Nutefall and other officers were present when he was abused,

and that Defendant Nutefall was the only one to choke, punch or kick Plaintiff.  As the Supreme Court reiterated in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1952, 173 L. Ed. 2d 868, 887 (2009), in cases similar to the case *sub judice*, where the doctrine of *respondeat superior* is inapplicable, a defendant cannot be held liable unless he himself acted on account of a constitutionally protected characteristic. Since "vicarious liability is inapplicable to... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. at 1948, 173 L. Ed. 2d 868 (2009).  "A Complaint must state a claim that is plausible on its face." *Id*. at 1949-50, 1953, 173 L. Ed. 2d 868 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  As was the case in *Iqbal*, here the Plaintiff's complaint does not contain any factual allegations sufficient to plausibly suggest that Defendants Broadus, Byrd or Stewart themselves violated a constitutional right of the Plaintiff. Therefore, Plaintiff's pleadings do not meet the standard necessary to comply with Federal Rule of Civil Procedure 8 and subject Defendants Broadus, Byrd or Stewart to liability in their individual capacities.

However, out of an abundance of caution, the Court will analyze all Defendants' claim of qualified immunity.  In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert*, 500 U.S. at 231.  Plaintiff only identifies Defendant Nutefall as the officer that choked, punched and kicked him. (*See* Pl.'s Compl. [1-1].)  While Plaintiff alleges he was kicked by Defendant Nutefall while he was handcuffed, Plaintiff does not present any evidence in support of this allegation.  Also, Plaintiff did not submit any sick call request or seek any medical treatment following the incident. (*See* Exs. "A," "F" Attach. [37-1, 37-3]. Defs.' Mot. Summ. J.) The Court notes that § 1983 imposes liability only for violations of constitutional rights, and not merely for

violations of duties of care arising under tort law.  Thus, not every injury caused by a state official is actionable under § 1983. *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1229 (5th Cir. 1988); *Mark v. Caldwell*, 754 F.2d 1260, 1261 (5th Cir. 1985) (recognizing that § 1983 does not provide a cause of action for every injury wrongfully inflicted by a state officer).  Accordingly, § 1983 remedies are limited to official conduct that (1) caused some meaningful injury, (2) was grossly disproportionate to the need presented, and (3) was motivated by malice. *Hinojosa*, 834 F.2d 1229.

Plaintiff contends that on January 30, 2009 he was attacked by Defendant Nutefall.  Plaintiff claims that Defendant Nutefall first started choking him, and that after other officers arrived and restrained him Defendant Nutefall then began to punch him in the face. (Pl.'s Compl. [1-1] 4.)  Also, Plaintiff asserts that at some point he was placed in handcuffs and Defendant Nutefall then kicked him in the side. *Id.*  Plaintiff claims that he suffered a blood clot in his eye and bruised ribs. (*See* Attach. [1-2] Pl.'s Compl. 2.)  However, as previously noted, Plaintiff never sought any type of medical attention or treatment following the incident.  The affidavits attached to Plaintiff's complaint support the allegation that an altercation between Plaintiff and Defendant Nutefall occurred while Plaintiff was being restrained and moved to BE lockdown.  However, Plaintiff has not presented any evidence to contradict Defendants' contention that he was refusing to follow orders, making threats and aggressive movements towards deputies, and resisting attempts to restrain him and transport him to BE lockdown.  Furthermore, there is no mention in the affidavits submitted by Plaintiff of him ever being beaten or kicked while he was handcuffed.

As noted previously, Defendants have submitted a report of the incident that states Plaintiff was refusing orders and was verbally abusive and combative with officers which caused them to use force in restraining him.  Defendants note that Plaintiff did not require any medical treatment following the incident.  Furthermore, Plaintiff never filed a sick call or medical request seeking

medical treatment concerning the incident on January 30, 2009. (*See* Ex. "A," "F" Attach. [37-1, 37-3] Defs.' Mot. Summ. J.)  The evidence of record demonstrates that Plaintiff obtained nothing more than bruises while resisting officers and being combative with officers that were attempting to place him in disciplinary segregation for refusing to follow instructions, making aggressive moves towards officers and being verbally abusive.  Therefore, Plaintiff has not established that he suffered an injury that was more than *de minimis*. *See Hudson v. McMillian*, 503 U.S. 1, 9-10, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992); *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999); *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997) (Bruises suffered by an inmate cause by alleged excessive use of force and from which the plaintiff recovered within three days did not constitute a physical injury cognizable under the PLRA).  The Court notes that Plaintiff has not responded to Defendants' contention that he received nothing more than a *de minimis* injury.

Furthermore, assuming Plaintiff's injury was more than *de minimis*, Plaintiff must still present evidence that the use of force was clearly excessive and the excessiveness was clearly unreasonable. *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).  Plaintiff has not presented any evidence to contradict Defendants' accounting of the events on January 30, 2009.  In fact, the affidavits submitted by Plaintiff with his complaint support Defendants' report of the incident.  The Court also notes that, as stated previously, Plaintiff has not responded to Defendants' summary judgment motion.  The evidence of record shows that the inmates of JE dayroom refused to follow orders from officers and the television was subsequently turned off.  At that point, Plaintiff confronted officers, began verbally abusing the officers and threatening to fight them, refused their orders to calm down and return to the dayroom, took off his clothes and made an aggressive move towards the officers.  While officers were attempting to remove Plaintiff from JE dayroom and place him in disciplinary segregation, Plaintiff became combative with the officers, resisted them, and

refused to follow their orders.  Officers, therefore, had to physically restrain Plaintiff in order to remove him from the dayroom and place him in segregation which resulted in bruises to Plaintiff's person.  There is no evidence any officer used clearly unreasonable excessive force in restraining and removing Plaintiff from JE dayroom and placing him in segregation.  Thus, the Court is left to conclude that Plaintiff has failed to create a genuine issue as to whether he suffered a violation of his constitutional rights.

Assuming, *arguendo*, that Plaintiff has raised a genuine issue as to whether his constitutional rights were violated, the Court finds that Plaintiff has presented no evidence of any unreasonable conduct on behalf of Defendants.  Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable.  *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998).   In order to overcome the bar of qualified immunity, Plaintiff must allege that Defendants' conduct was objectively unreasonable in response to the alleged abuse recounted in Plaintiff's Complaint.

The Court notes that Plaintiff has presented no evidence that Defendants Broadus, Byrd or Stewart were involved in this alleged abuse or that they were even aware that it had occurred.  It appears that Plaintiff seeks to establish Defendants Sheriff Byrd and Director Broadus' liability based on the conduct of their employees.  However,  the doctrine of *respondeat superior* is inapplicable in Section 1983 cases.  *Williams*, 909 F.2d at 123.  Furthermore, Plaintiff has not presented any evidence that Defendant Nutefall's conduct was objectively unreasonable.  Therefore, because Plaintiff is unable to present any evidence of Defendants Broadus, Byrd or Stewart's personal involvement in the alleged abuse, any evidence of Defendants Sheriff Byrd or Supervisor Harris' knowledge of the conduct of their employees, or any other unreasonable conduct on behalf Defendants, the Court finds that Defendants are entitled to qualified immunity against Plaintiff's

individual capacity claims.

B.  Failure to Train/Supervise:

Plaintiff's complaint asserts  that Defendants Sheriff Byrd and Director Broadus are liable under section 1983 by and through their employment with Jackson County to oversee the JCADC. The Court notes that Plaintiff's official capacity claims are, in reality, claims against the offices which each occupied at the time of the alleged incidents and, ultimately, Jackson County.  To the extent Plaintiff brings this action against Defendants Byrd and Broadus in their official capacities, he must establish a constitutional violation, and in addition must satisfy the requirements necessary to impose municipal liability.

"Supervisory officers cannot be held liable under Section 1983 for the actions of subordinates on any theory of vicarious liability." *Hampton v. Oktibbeha County Sheriff Dept*., 480 F.3d 358, 367 (5th Cir. 2007) (quoting *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir. 1985)). Instead. counties and supervisors are liable for the constitutional violations committed by county employees only when those violations result directly from a municipal custom or policy.  *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000). A municipality's failure to properly train or supervise its employees can be a policy or custom giving rise to § 1983 liability. *See City of Canton, Ohio v. Harris,* 489 U.S. 387, 387 (1988). Therefore, Plaintiff must prove that: (1) the training procedures of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the training policy, and (3) the inadequate training policy directly caused the constitutional deprivation. *See Baker v. Putnal,* 75 F.3d 190, 200 (5th Cir.1996). Finally, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation  . . . cannot be conclusory; it must contain specific facts.*"  Spiller v. City of Tex. City, Police Dept*., 103 F.3d 162, 167 (5th Cir. 1997).

Plaintiff alleges that Defendants Sheriff Byrd and Director Broadus failed to provide adequate training and/or supervision to Defendant Deputy Nutefall and Defendant Classification Officer Stewart. (*See* Pl.'s Compl. [1-1].)  However, Plaintiff must offer proof that the alleged constitutional violations occurred because Defendants Sheriff Byrd and Director Broadus  failed to train or supervise their employees, and that the inadequate training was the result of an official custom or policy of the JCADC.  Plaintiff has not specifically alleged that there existed a custom of JCADC employees abusing and/or segregating inmates or that there was a policy to inadequately train employees.  Furthermore, Plaintiff has not provided any evidence that any defendant failed to train or supervise any deputy or that the alleged inadequate training was the result of an official policy or custom.

In response, Defendants Sheriff Byrd and Director Broadus argue that the JCADC deputies were sufficiently trained and therefore there was no deliberate indifference by the county to the rights of persons with whom they would have come into contact.  First,  the Defendants  argue that both named JCADC deputy defendants, Nutefall and Stewart, are certified correctional officers that have been highly trained in their jobs as officers at the JCADC. (Defs.' Mem. [38-1] 8-9.)  They note that Defendant Nutefall was trained regarding the standard operating procedures for firearms and application of deadly force, and he was also trained in incident based reporting and in semi-auto pistol transition. (*See* Ex. "C" Attach. [37-2] Defs.' Mot. Summ. J.; *see also* Defs.' Mem. [38-1] 8-9.)  Defendant Nutefall also received a professional certificate from the American Jail Association in officer safety and use of force and a professional certificate from the Mississippi Board on Jail Officer Standards and Training as being qualified to be an Adult Detention Officer. *Id.*  Defendant Nutefall received a professional certificate from the Board on Law Enforcement Officer Standards and Training. *Id.*  Also, Defendant Nutefall received a certificate regarding the standard operating

procedures for use of force, deadly and less lethal force and he received firearms training and proficiency demonstration. *Id.* Defendant Nutefall also has received certificates from the American Red Cross and for workplace first aid and CPR. *Id.* Defendants further note that Defendant Stewart was well-trained in her duties as a classification officer. Defendant Stewart has completed an objective jail classification, design and implementation training program conducted by the American Jail Association and received a professional certificate from the Mississippi Board on Jail Officer Standards and Training. (*See* Ex. "G" Attach. [37-3] Defs.' Mot. Summ. J.; *see also* Defs.' Mem. [38-1] 8-9.) Defendant Stewart also completed a correctional officers course, a jail officers' correspondence training program, and a basic jailer's seminar. *Id.* Also, Defendant Stewart was trained in handling crisis situations for correctional officers, trained in multimedia standard first aid, trained as an emergency medical responder, trained in use of O.C. spray, and was certified as a police marksman. *Id.* Defendants Sheriff Byrd and Director Broadus assert that Defendants Nutefall and Stewart had been properly trained to work in a correctional facility and therefore there was no deliberate indifference on the part of Jackson County. The Court notes that Plaintiff did not respond to Defendants claim that the JCADC deputies were properly trained.

Ordinarily, to impose liability for failure to train, "the [plaintiff's] focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). In particular, there must be specific allegations as to how a particular training program is defective. *Id.* While there is evidence that Plaintiff received bruises from JCADC personnel while he was involved in an altercation with them and that for a period of time he was housed in an all black zone, Plaintiff makes no specific allegations as to how the training and supervision program at the JCADC was inadequate or defective. Furthermore, Plaintiff fails to present any evidence to contradict the Defendants'

assertions that the training and supervision of JCADC deputies was adequate.  This Court finds that Plaintiff's lone unsubstantiated allegation of lack of training is insufficient to support a claim of inadequate training or supervision.

In addition to proving that Defendants Sheriff Byrd and Director Broadus  inadequately trained and supervised the JCADC employees, Plaintiff is required to prove that the inadequate training resulted directly from a municipal custom or policy.  *See Conner*, 209 F.3d at 796. However, Plaintiff makes no direct allegation of an official JCADC policy that caused the allegedly inadequate training and supervision of the facility's employees.  Also, Plaintiff presents no evidence of an official JCADC policy that caused the allegedly inadequate training and supervision of the facility's employees.  The Court finds that Plaintiff's bare assertions, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation.

Based on the evidence of record, the Court finds that Plaintiff has failed to prove the existence of a genuine issue as to whether  there existed an official policy or custom of inadequately training or supervising the employees of the JCADC.

Assuming, *arguendo*, that Plaintiff could  prove the existence of an official policy that resulted in inadequate training or supervision, the Court finds that Defendants Sheriff Byrd and Director Broadus would still be entitled to summary judgment as to Plaintiff's official capacity claims because he cannot prove that their alleged failure to adequately train or supervise amounted to deliberate indifference.  "Deliberate indifference . . . [requires] proof that a municipal actor disregarded a known or obvious consequence of his action."  *Estate of Davis ex rel McCully*, 406 F.3d at 381.  To establish deliberate indifference, a plaintiff must prove  that a defendant acted with more than negligence or even gross negligence.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388

(1989).   Furthermore, a plaintiff must ordinarily demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and likely to result in a constitutional violation.'" *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003) (quoting *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001).

Plaintiff has not proffered any evidence to establish that Defendant Sheriff Byrd or Director Broadus were aware that the training and supervision of the JCADC employees was inadequate and likely to result in constitutional violations.  Plaintiff has offered no evidence of civil rights violations that occurred prior to January 30, 2009.  The Court finds that, absent some evidence of a pattern of prior violations, Plaintiff has failed to prove that Defendant Byrd or Broadus were aware that he faced a substantial risk of harm.

Based on the foregoing analysis, the Court finds that Plaintiff's complaint fails to establish that a policy or custom on the part of the JCADC was the moving force behind any alleged constitutional violations.   Furthermore, this Court finds that Plaintiff's allegations do not indicate that he faced a substantial risk of serious harm to which a defendant responded with deliberate indifference.  Thus, there exists no basis for Plaintiff's claims against Defendant Byrd or Broadus in their official capacities.

Additionally, as previously noted, Plaintiff does not specify whether his claims are against Defendant Byrd and Defendant Broadus in their individual capacities, their official capacities, or both.  Because *pro se* complaints must be construed liberally, the Court will interpret Plaintiff's Complaint to allege claims against Defendant Byrd and Defendant Broadus in both their individual and official capacities. *See Williams*, 2006 WL 1581908, *5.  However, because they are law enforcement officials, they are entitled to the defense of qualified immunity.  *See Gagne*, 805 F.2d at 559.   In assessing a claim of qualified immunity, the determination must first be made as to

whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert*, 500 U.S. at 231. If a violation of a right has been alleged, then it must be determined whether the defendant's conduct was objectively reasonable. Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare*, 135 F.3d at 327.

The Court finds that Plaintiff has failed to create a genuine issue as to whether any defendant acted unreasonably. To impose liability for failure to train, "the [plaintiff's] focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Roberts*, 397 F.3d at 293. In particular, there must be specific allegations as to how a particular training program is defective. *Id.* Plaintiff does not set forth specific allegations as to how Defendant Sheriff Byrd or Director Broadus were unreasonable in their training and supervising methods. In fact, Plaintiff's only specific allegation against Defendants Byrd and Broadus is that they failed to train the JCADC deputies. (*See* Pl.'s Compl. [1-1].) However, Defendants Byrd and Broadus have rebutted this allegation by providing evidence that the JCADC has a written use of force policy by which all Officers must abide and an established non-racial classification system. (*See* Exs. "E," "F" Attach. [37-2, 37-3] Defs.' Mot. Summ. J.) Also, Defendants Byrd and Broadus have provided the written policies and procedures that JCADC officers must follow when they are in situations when use of force is necessary, and they have provided an accounting of the non-racial classification procedures. (*See* Exs. "E," "F," "H" Attach. [37-2, 37-3, 37-4] Defs.' Mot. Summ. J.) Plaintiff has neither disputed these policies and procedures nor indicated how they are defective or inadequate.

Furthermore, Plaintiff has failed to offer any probative evidence that Defendant Byrd or Broadus failed to reasonably train and supervise the employees of the JCADC. In the case at hand, the Court finds that Plaintiff has failed to establish any unreasonable conduct on behalf of Defendant

Byrd or Broadus.  Thus, Defendants Sheriff Byrd and Director Broadus are entitled to qualified immunity as to Plaintiff's individual capacity claims.

The Court also finds that to the extent Plaintiffs' complaint could be construed to allege claims under state law, they are barred by provisions contained in the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-1, *et seq.* Specifically, the Act provides that a government subdivision shall not be liable for a claim "of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary, or other such institution regardless of whether such claimant is or is not an inmate . . . when the claim is filed." MISS. CODE ANN. § 11-46-9(1)(m).  The Court finds that because Plaintiff was an inmate at the time these events allegedly occurred, any claims arising under Mississippi law as a result of these alleged events are barred by the above provision.

## **RECOMMENDATION:**

After considering the evidence of record, the Court concludes that Plaintiff has failed to create a genuine issue as to whether the Defendants violated Plaintiff's constitutional rights during his incarceration as a pretrial detainee at the JCADC.  Plaintiff has presented no evidence indicating that the alleged conditions of confinement were imposed by the Defendants for a punitive purpose. Further, Plaintiff's allegation that his equal protection rights were violated does not rise to the level of a constitutional violation.  Finally, Plaintiff's allegation that he was subjected to excessive force at the hands of a JCADC employee is conclusory and unsupported by any probative evidence. Accordingly, the Court recommends that Defendants are entitled to summary judgment, and Plaintiff's official and individual capacity claims against Defendants should be dismissed with prejudice.

In accordance with the Rules of this Court, any party, within fourteen (14) days after being

served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United States Auto Ass'n*, 79 F.3d 1415, 1425 (5th Cir. 1996).

**SO ORDERED**, this the ___2nd___ day of December, 2010.

_____*s/ John M. Roper, Sr.*_____
CHIEF UNITED STATES MAGISTRATE JUDGE